UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-272 (JRT/DJF)

UNITED STATES OF AMERICA,

  Plaintiff,

v.

VANCE LUTHER BOELTER,

  Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The defendant Vance Luther Boelter agrees to resolve this case on the terms and conditions that follow.  This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government").  This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges**.  The defendant agrees to plead guilty to Counts One through Six of the Indictment, which charges:

Count 1:  Stalking of Representative Melissa Hortman, in violation of 18 U.S.C. §§ 2261A(2)(A) and 2261(b)(1);

Count 2:  Stalking of Senator John Hoffman, in violation of 18 U.S.C. §§ 2261A(2)(A) and 2261(b)(2);

1



Count 3:  Murder of Melissa Hortman Through the Use of a Firearm, During and in Relation to a Crime of Violence, all in violation of 18 U.S.C. § 924(j);

Count 4:  Murder of Mark Hortman Through the Use of a Firearm, During and in Relation to a Crime of Violence, all in violation of 18 U.S.C. § 924(j);

Count 5:  Discharge of a Firearm, During and in Relation to a Crime of Violence (Shooting of Melissa and Mark Hortman), all in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), (iii);

Count 6:  Discharge of a Firearm, During and in Relation to a Crime of Violence (Shooting of Sen. John Hoffman and Yvette Hoffman, and attempted shooting of Hope Hoffman) all in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), (iii).

The defendant fully understands the nature and elements of the crimes with which he has been charged.  As part of the agreement, as discussed below, the parties agree to recommend a sentence of two consecutive terms of life imprisonment followed by a consecutive term of 480 months of imprisonment. Also as part of the agreement, the United States agrees not to seek the death penalty against the defendant.

2.    **Factual Basis**.  The defendant is pleading guilty because he is in fact guilty of all counts.  In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

In the early morning hours of June 14, 2025, the defendant carried out a series of targeted shootings against elected Minnesota officials while

2

impersonating a law enforcement officer. Disguised with a police uniform, badge, tactical gear, body armor, and a silicone mask while operating a black SUV equipped with law-enforcement-style emergency lights, the defendant carried and used multiple firearms to execute the attacks. The defendant traveled to the homes of multiple Minnesota state legislators with the intent to commit murder.

The defendant planned the murders months in advance. He acted alone in both the planning and in the murders. As part of his conduct, the defendant used his personal laptop computer to research and identify intended victims, including Representative Melissa Hortman and Senator John Hoffman. This research included the use of online people-search websites, online digital maps, and other internet sources to locate and gather information about the victims. As part of his planning, the defendant compiled and recorded detailed information about Melissa Hortman and John Hoffman and their families which he recorded by hand in paper notebooks. This information included names of spouses, ages, number of children, home addresses, descriptions of residences and surrounding area, surveillance vantage points, phone numbers, and other personal identifying details. In furtherance of the defendant's plan, he also purchased a GPS navigation device and input the home addresses of Melissa Hortman, John Hoffman, and other elected officials. He then used the GPS device to navigate to those locations. This research and note-taking were

3

undertaken with the intent to facilitate stalking and ultimately acts of violence, resulting in the deaths of Melissa and Mark Hortman and life-threatening bodily injury to John and Yvette Hoffman.

That night, the defendant first drove his black SUV equipped with law-enforcement-style emergency lights to the home of Minnesota State Senator John Hoffman in Champlin, Minnesota. Posing as a police officer, the defendant wore a black body armor vest, carried a flashlight, and concealed his face with a silicone mask. The defendant approached the home, pounded on the door, and repeatedly shouted, "This is the police, open the door." When Senator Hoffman answered the door with his wife and daughter, the defendant falsely stated that a shooting had been reported and asked whether the Hoffmans had any guns; he then entered the Hoffman home. After Senator Hoffman said they did not have any guns, the defendant ordered the Hoffman family to put their hands up. Shortly afterwards, the defendant said, "This is a robbery," pointed a nine-millimeter handgun at the family, and attempted to murder the Hoffman family. The defendant fired multiple shots at the Hoffman family, critically wounding both Senator Hoffman and his wife. Their daughter was not shot.

After shooting the Hoffmans, the defendant traveled to the homes of two other Minnesota lawmakers with the intent to murder them too, but he did not encounter either of them.

4

VB

Next, the defendant drove his SUV to the home of Melissa and Mark Hortman in Brooklyn Park, Minnesota, and parked in the driveway with the police-style emergency lights flashing. Still disguised as a police officer, this time wearing a mask and wig, the defendant rang the front doorbell and shouted, "Police, welfare check." When Mr. Hortman answered the door, the defendant shined a flashlight into Mr. Hortman's eyes and stated that there had been reports of shots fired. Mr. Hortman denied any knowledge of a shooting, stating at one point, "Good God, I was asleep."

The defendant then asked who else was inside the home. When Mr. Hortman responded that only his wife was there, the defendant said, "I need to see her before I go." Mr. Hortman then called into the house, "Melissa, they need to see you." As the exchange continued, Mr. Hortman told the defendant, who remained outside the door shining a flashlight, "We can't see you." Mr. Hortman asked for the defendant's name and badge number. In response, the defendant provided a false name and badge number. After the defendant gave the false name and badge number, Mr. Hortman asked, "What jurisdiction are you?" The defendant hesitated before responding, "Uh—Maple Grove." Immediately after that, the defendant drew a nine-millimeter handgun, shot Mark Hortman multiple times, and rushed forward through the front door into the home. The defendant then shot Melissa Hortman repeatedly inside the

home as she attempted to flee upstairs.  While murdering Melissa Hortman, the defendant pressed the gun to her head and fired.

As to Count One, Stalking of Melissa Hortman, all in violation of 18 U.S.C. §§ 2261A(2)(a) and 2261(b)(1), the defendant stipulates and admits that (1) he used the mail, an interactive computer service and electronic communication service and electronic communication system of interstate commerce, and another facility of interstate and foreign commerce, to engage in a course of conduct; (2) he acted with the intent to kill and injure another person, namely Melissa Hortman; (3) the defendant's conduct placed Melissa Hortman in reasonable fear of death and serious bodily injury to Hortman's self and to her spouse Mark Hortman; and (4) the defendant's acts resulted in the death of Melissa Hortman.

As to Count Two, Stalking of John Hoffman, all in violation of 18 U.S.C. §§ 2261A(2)(a) and 2261(b)(2), the defendant stipulates and admits that (1) he used the mail, an interactive computer service and electronic communication service and electronic communication system of interstate commerce, and another facility of interstate and foreign commerce, to engage in a course of conduct; (2) he acted with the intent to kill and injure another person, namely John Hoffman; (3) the defendant's conduct placed John Hoffman in reasonable fear of death and serious bodily injury to Hoffman's self, his spouse Yvette Hoffman, and his daughter Hope Hoffman; and (4) the defendant's acts

6

resulted in permanent disfigurement or life-threatening bodily injury to John Hoffman.

As to Count Three, the Murder of Melissa Hortman Through the Use of a Firearm, in violation of 18 U.S.C. § 924(j)(1), the defendant stipulates and admits that (1) he committed the crime of interstate stalking of Melissa Hortman, as charged in Count One; (2) he knowingly discharged a firearm during and in relation to that crime; (3) he used the firearm to cause the death of Melissa Hortman; (4) he unlawfully killed Melissa Hortman; and (5) he did so with malice aforethought.

As to Count Four, the Murder of Mark Hortman Through the Use of a Firearm, in violation of 18 U.S.C § 924(j)(1), the defendant stipulates and admits that (1) he committed the crime of interstate stalking of Melissa Hortman, as charged in Count One; (2) he knowingly discharged a firearm during and in relation to that crime; (3) he used the firearm to cause the death of Mark Hortman; (4) he unlawfully killed Mark Hortman; and (5) he did so with malice aforethought.

As to Count Five, the Shooting of Melissa and Mark Hortman – Firearms Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), (iii), the defendant stipulates and admits that (1) he committed the crime of interstate stalking of Melissa Hortman, as charged in Count One, and (2) he knowingly discharged a firearm during and in relation to that crime.

7

As to Count Six, the Shooting of John and Yvette Hoffman and Attempted Shooting of Hope Hoffman – Firearms Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), (iii), the defendant stipulates and admits that (1) he committed the crime of interstate stalking of John Hoffman, as charged in Count Two, and (2) he knowingly discharged a firearm during and in relation to that crime.

The defendant stipulates and agrees that these actions took place in Minnesota. The defendant committed these actions voluntarily and appreciated the wrongfulness of the conduct.

3. **Waiver of Pretrial Motions.** The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. The defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, he would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of

8

these proceedings and, in fact he has counsel appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. He understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge him guilty without a trial.

5.    **Additional Consequences**. The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6.    **Statutory Penalties**.   The defendant understands that the charges to which he is pleading guilty are felonies, carrying the following statutory penalties apply:

a.    The following terms of imprisonment:

| Ct. | Description | Statute | Punishment |
|---|---|---|---|
| Ct. 1 | Stalking of Melissa Hortman | 18 U.S.C. §§ 2261A(2)(A),2261(b)(1) | Any term of years or life |
| Ct. 2 | Stalking of John Hoffman | 18 U.S.C. §§ 2261A(2)(A),2261(b)(2) | Not more than 20 years |

9

VB

| Ct. 3 | Murder of Melissa Hortman Through Use of a Firearm | 18 U.S.C. § 924(j) | Any term of years, life, or death |
|---|---|---|---|
| Ct. 4 | Murder of Mark Hortman Through Use of a Firearm | 18 U.S.C. § 924(j) | Any term of years, life, or death |
| Ct. 5 | Shooting of Melissa and Mark Hortman – Firearms Offense | 18 U.S.C. §924(c)(1)(A)(i), (ii), (iii) | Not less than 10 years, consecutive |
| Ct. 6 | Shooting of John and Yvette Hoffman and Attempted Shooting of Hope Hoffman – Firearms Offense | 18 U.S.C. §924(c)(1)(A)(i), (ii), (iii) | Not less than 10 years, consecutive |

  b. a term of supervision of five years;

  c. a fine of up to $250,000;

  d. mandatory restitution to the victims of his crimes;

  e. costs of prosecution, imprisonment, and supervision, as defined in 28 U.S.C. §§ 1918(b) and 1920; and

  f. a mandatory special assessment of $100 for each count under 18 U.S.C. § 3013(a)(2)(A).

7. **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States

10

Sentencing Guidelines in determining the appropriate sentence.  The parties stipulate to the following guidelines calculations:

a.  Count One – Stalking of Melissa Hortman

    i.  Base Offense Level.  The parties agree the cross reference to U.S.S.G. § 2A1.1(a) for First Degree Murder applies and the base offense level is **43**.  U.S.S.G. § 2A6.2(c).

    ii.  Chapter 3 Adjustments.   The parties agree the following adjustments apply under Chapter 3, Parts A, B, and C:

| Levels | Authority | Reason |
|---|---|---|
| +6 | § 3A1.2(b) | a victim was a government officer, the offense was motivated by such status, and the offense was an offense against a person |
| +2 | § 3B1.3 | abuse of a position of trust by impersonating a police officer |
| +4 | § 3B1.5 | use of body armor during the offense |

    iii.  Adjusted Offense level.  The resulting offense level is **55.**

b.  Count Two – Stalking of John Hoffman:

    i.  Base Offense Level.  The parties agree the cross reference to U.S.S.G. § 2A2.1(a)(1) for Attempted Murder applies and the base offense level is **33**.  U.S.S.G. § 2A6.2(c).

    ii.  Specific Offense Characteristics.  The parties agree the base offense level should be increased by **4** levels because the victim sustained life-threatening bodily injury.  U.S.S.G. § 2A2.1(b)(1).

11



iii.    Chapter 3 Adjustments.  The parties agree the following adjustments apply under Chapter 3, Parts A, B, and C:

| Levels | Authority | Reason |
|---|---|---|
| +6 | § 3A1.2(b) | a victim was a government officer, the offense was motivated by such status, and the offense was an offense against a person |
| +2 | § 3B1.3 | abuse of a position of trust by impersonating a police officer |
| +4 | § 3B1.5 | use of body armor during the offense |

iv.    Adjusted Offense Level.  The resulting offense level is **49**.

c.    Count Three – Murder of Melissa Hortman Through Use of a Firearm:

i.    Base Offense Level.  The parties agree the base offense level is **43**.  U.S.S.G. § 2A1.1(a).

12

VB

ii.    Chapter 3 Adjustments.  The parties agree the following adjustments apply under Chapter 3, Parts A, B, and C:

| Levels | U.S.S.G. Authority | Reason |
|--------|-------------------|--------|
| +6 | § 3A1.2(b) | a victim was a government officer, the offense was motivated by such status, and the offense was an offense against a person |
| +2 | § 3B1.3 | abuse of a position of trust by impersonating a police officer |
| +4 | § 3B1.5 | use of body armor during the offense |

iii.    Adjusted Offense level.  The resulting offense level is **55.**

d.    Count Four – Murder of Mark Hortman Through Use of a Firearm:

i.    Base Offense Level.  The parties agree that the base offense level is **43**.  U.S.S.G. § 2A1.1(a).

ii.    Chapter 3 Adjustments.  The parties agree the following adjustments apply under Chapter 3, Parts A, B, and C:

| Levels | U.S.S.G. Authority | Reason |
|--------|-------------------|--------|
| +2 | § 3B1.3 | abuse of a position of trust by impersonating a police officer |
| +4 | § 3B1.5 | use of body armor during the offense |

iii.    Adjusted Offense level.  The resulting offense level is **49.**

13

VB

e.   Count Five – Shooting of Melissa and Mark Hortman – Firearms Offense: The guideline sentence is the minimum term of imprisonment required by statute, U.S.S.G. § 2K2.4, which is 10 years to be served consecutively to any other sentence, 18 U.S.C. § 924(c)(1)(A)(iii).

f.   Count Six – Shooting of John and Yvette Hoffman and Attempted Shooting of Hope Hoffman – Firearms Offense: The guideline sentence is the minimum term of imprisonment required by statute, U.S.S.G. § 2K2.4, which is 10 years to be served consecutively to any other sentence, 18 U.S.C. § 924(c)(1)(A)(iii).

g.   Grouping. Counts 1 and 3 group because they involve the same victim and the same act or transaction. U.S.S.G. § 3D1.2(a). The offense level for Counts 1 and 3 is level **55**. Counts 2 and 4 do not group. The offense level for Count 2 is **49**. The offense level for Count 4 is **49**. Counts 5 and 6 are excluded from the grouping analysis because the statute specifies a term of imprisonment to be imposed. U.S.S.G. § 3D1.1(b)(1). The multiple counts of conviction constitute 2 units, resulting in a **2-level increase**. The combined adjusted offense level is **57**.

h e.   Acceptance of Responsibility. The Government agrees to recommend that the defendant receive a **2-level** reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the Government of his intention to enter a plea of guilty, the Government agrees to recommend that he receive an additional **1-level** reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the Government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; and (2) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

i d.   Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into **Criminal History Category I**. U.S.S.G. § 4A1.1.

14



e.   <u>Zero-Point Offender.</u>  The parties agree the defendant does not receive a zero-point offender adjustment because he used violence, his offenses resulted in death and serious bodily harm, and he possessed a firearm during the offense. U.S.S.G. § 4C1.1(a)(3), (4), (7).

f.   <u>Guidelines Range</u>.  If the adjusted offense level is **54**, and the criminal history category is **I**, the Sentencing Guidelines range is **Life**. An additional 240-month term of imprisonment, for Counts 5 and 6, must run consecutively to the Life sentence.

g.   <u>Fine Range</u>.  The fine range is $50,000 to $500,000. U.S.S.G. § 5E1.2(c)(3).

h.   <u>Supervised Release</u>.  The Sentencing Guidelines require a term of supervised release not more than 5 years. U.S.S.G. § 5D1.2(a)(1).

8.   **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.   **Agreements as to Sentencing Recommendation**. The parties agree to recommend a sentence of two consecutive terms of life imprisonment

15



followed by 40 years of imprisonment.  *See* 18 U.S.C. § 3584 and U.S.S.G. § 5G1.2.  Specifically, the parties agree to recommend:  for Count One, a term of life imprisonment, to run concurrently with the sentence for Count Three; for Count Two, a term of 20 years (240 months), to run consecutively to all other sentences; for Count Three, a term of life imprisonment to run concurrently with the sentence for Count One; for Count Four, a term of life imprisonment to run consecutively to all other sentences; for Count Five, a term of 10 years (120 months), to run consecutively to all other sentences; and for Count Six, and a term of 10 years (120 months), to run consecutively to all other sentences.  If the Court does not accept the sentencing recommendation of the parties, neither party will have a right to withdraw from this plea agreement.

10.    **Special Assessment**.  The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3.  The defendant agrees to pay the special assessments.

11.    **Restitution Agreement**.  The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order him to make restitution to the victims.  The defendant agrees that he owes restitution and agrees that the Court shall order

16

him to pay restitution in an amount to be determined at or before the sentencing hearing.

The defendant understands that the Court may order additional restitution if additional victim losses are identified at the time of sentencing. The defendant agrees that restitution shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

12. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), all firearms, ammunition, and associated accessories involved in the violations charged in Counts One through Six of the Indictment, including but not limited to: (1) all property listed in the Forfeiture Allegations of the Indictment; and (2) all firearms, ammunition and accessories seized from the defendant's residence, or otherwise seized from the defendant, in connection with the investigation in this matter (collectively, "the Property").

The defendant agrees that the United States and/or any other law enforcement agency, including the Minnesota Bureau of Criminal

17

Apprehension, may, at its option, forfeit such property through civil, criminal or administrative proceedings. The defendant waives any deadline or statute of limitations for the initiation of any such proceedings, abandons any right, title or interest he may have in the Property, and waives any right he would otherwise have to receive notice of any non-judicial forfeiture proceeding for the Property pursuant to 18 U.S.C. § 983 or any other provision of law. The defendant waives all statutory and constitutional defenses to the forfeiture and consents to the destruction of the Property. To the extent the defendant has sought remission or otherwise challenged the forfeiture of the Property, he withdraws any such challenges.

The defendant agrees to execute any further documents necessary to forfeit the Property as set forth above, including any waiver of ownership or consent to administrative forfeiture form that may be required to complete the forfeiture of any of the firearms, accessories or ammunition set forth above.

13. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to: the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the

statutes to which the defendant is pleading guilty.  The parties agree, however, that this waiver does not preclude the defendant from appealing the substantive reasonableness of a sentence above two consecutive life terms of imprisonment and a consecutive 480-month term of imprisonment.

The defendant also waives the right to collaterally attack the defendant's conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.  This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this plea agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with his attorneys.  He understands the rights being waived, and he waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence, except that it reserves the right to appeal the substantive reasonableness of any sentence below two consecutive life terms of imprisonment and a consecutive 480-month term of imprisonment.

19

14.    **FOIA Requests.**    The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

15.    **Complete Agreement.**    This is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

DANIEL N. ROSEN
United States Attorney

Date: June 10, 2026

BRADLEY M. ENDICOTT
MATTHEW D. FORBES
Assistant U.S. Attorneys

Date: 06/10/2026

VANCE LUTHER BOELTER
Defendant

Date: June 10, 2026

MANNY K. ATWAL
Counsel for Mr. Boelter

Date: 06.10.26

KIMBERLY L. SHARKEY
Counsel for Mr. Boelter

Date: 6/10/26

RYAN N. NORWOOD
Counsel for Mr. Boelter

21